morning your honors may it please the court my name is Alex Simpson from the California innocence project on behalf of petitioner Kimberly Long the issue there's three issues that I'd like to talk about today with the court first with regards to the sufficiency of the evidence claim first is that they're based on the facts that were presented to the jury and to the state court that no rational trier of fact could have found Kimberly Long guilty beyond reasonable doubt the second is that the state court's decision and rejection of the appeal was objectively unreasonable for that same reason that's correct your honor and the third issue which I'd like to talk about is whether 28 USC 22 54 d2 may be used in sufficiency cases like this can't well I and I disagree with that I think that there this particular case presents very specific reasons why 22 54 d2 should be used in insufficiency cases but I certainly understand that this is my last argument so that's not yeah for the end but can I let me just zero in though on the first this is the thing that gives me the most trouble with respect to your your argument do you do you concede that we basically we have to start our analysis from the client was dropped off at 120 I our argument in our position is always oh are you saying in terms of the legal posture given where we sit right the jury has already has obviously heard this evidence albeit not live from mr. Dills but he clearly says that it's 120 and if you read the evidence in the light most favorable to prosecution as we're supposed to do you say you agree that we basically start our analysis from that I think that your honor your honor's question is is is a valuable one because of the issues with regards to the state's position of the prosecution's theory and discrepancies that the that that the evidence in the record had presented before the state court and before the before the trial court so what's the answer to the question I think specifically the discrepancies that are that that were established a trial indicate that one cannot rely upon Jeff fills a sole testimony because that the province of the jury granted this is a circumstantial case but as it comes to us we have to accord deference to the state court for one and secondly under the governing standard for sufficiency of the evidence we have to examine all the evidence in the light most verdict of guilt so in view of that we had deals testimony that he dropped your client off between 120 and 130 and there was a neighbor who more or less corroborated that so I guess I you're waffling in answer to judge Watford's question but it seems to me that we have to take the evidence in favor of the evidence it would be most helpful if you could also presented in that light and why even in that light in your view it's not sufficient well I think there's two answers to the question the first with regards to 2254 d2 is that even if we're just looking as to whether or not the state court's determination was an unreasonable application of the law there are guidelines that have been established that is that that state that in making that determination the failure of the state court to give appropriate way to all of the evidence means that its conclusion is objectively unreasonable or that the even with the difference due by statute to the state court's determinations the federal habeas court must look to the totality of the evidence in evaluating the state court's decision so with regards to Jeff bills is testimony I understand the Jeff bills is testimony was that he dropped off Kimberly long at a time that's earlier than than what all of the other witnesses and all the other evidence show except the neighbor well the neighbor was not consistent as to whether or not it was Jeff bills that that they heard in the parking lot or excuse me in the driveway or whether or not it was actually the the the victim Oswald Condi there was the consistency of the neighbors were that every single neighbor and there's six witnesses Juanita and Alex and of all Philip Linda Alexander Rosa Whistler and Brian Foster are all consistent in the statements that they heard a motorcycle pull up around 2 a.m. that a car alarm went off that shortly thereafter Kimberly long came out asking for assistance and screaming and eventually 9-1-1 was called approximately nine minutes later so they're all consistent with each other they're all consistent with Kimberly long statement that's that's when she was dropped off the only there's no reason for these witnesses other than having some sort of group hallucination to establish that this chain of events was what they remember from that from that from that evening that's the reason why I basically I think you have we have to assume that the jury heard all of the evidence you just ran through and concluded that she did in fact got dropped off at 120 because if she got dropped off at 2 a.m. I and that and the evidence indisputably indisputably establish that I would say there's no way a rational jury could have convicted right but you do have this very specific testimony from at least one witness who puts the time much earlier and so I'm just gonna tell you I'm starting from the premise that she got dropped off at 120 so help me work forward from there how a rational jury couldn't have said jeez you know her story is that she got you know she walked in and immediately saw him in the condition that he was if they believe that in fact no she really was dropped off 40 50 minutes earlier why wouldn't that allow a reasonable jury to say you know she probably did it I think the answer that question is is that first of all based on the court's review the court does have the ability to review whether or not the state court determination was objectively unreasonable so bundled into that that determination and evaluation I believe this court is is able to assess whether or not the the jury's determination even though it was supported by one witness whose testimony was not subject to cross-examination who did not have the ability to answer questions with regards to some of the other evidence that had later been established for example that the neighbors of Kimberly Long weren't actually interviewed by the time that Jeff Dills gave his preliminary hearing testimony so they could not have cross-examined Jeff Dills on that particular aspect whether or not he remembered particular facts correctly but there was there was certainly circumstantial evidence including things that a jury could consider consciousness of guilt there had been a physically violent quarrel between your client and the victim there was certainly certainly I guess circumstantial is the best way to put it because nobody saw what happened other than who did it and the person who died and I and I appreciate your honors question I think that that it's absolutely the issue that's before this court is what to do in a circumstantial evidence case the circumstantial evidence was of motive not of opportunity the circumstantial evidence was that she had a quarrel with with the victim earlier but in a circumstantial evidence case in order to subjectively reasonable in a sufficiency case there has to be evidence that proves beyond reasonable doubt not only that the evidence is consistent only with guilt but also inconsistent with every reasonable hypothesis of innocence and I'm quoting from the Ninth Circuit case that I'm unfortunately I don't have the citation in front of me but the evidence should point in a circumstantial evidence case the evidence should point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis but that of guilt so when we're talking about circumstantial evidence and sufficiency we have to look at whether or not there are reasonable inferences that establish a person's innocence and so she got just let me be blunt she got dropped off at 120 right and and according to her version of events he's already dead or just about to die at 120 and she waits 50 minutes to call 9-1-1 I think that the our position is that the prosecution's theory is simply unsupported by the evidence you cannot draw that conclusion but if you do draw the conclusion that I just there's a witness who says I dropped her off at 120 or 130 whatever you want to say and she says I called 9-1-1 within a couple of minutes after discovering this incredibly gruesome scene correct right those two right there they can't be squared and so why wouldn't the jury be able to say she was there for 40 minutes and didn't call 9-1-1 until 209 I think the issue is not necessarily what what the jury could or could not conclude I think the issue before this court is what can you review and if we have to review the evidence in the light most favorable to the verdict but I but I evidence that we've got on the light that's most favorable to the verdict is an individual who was not subject to cross-examination who did not appear in the trial who didn't have he was not subject to cross-examination correct why is that because he had died between the preliminary hearing but he was subjected to cross-examination in his testimony when he did testify at the preliminary hearing is that correct that the the facts of the case or that the preliminary hearing the police hadn't conducted the entirety of the investigation so for example one of the issues that they could not cross-examine Jeff feels about where the other statements that the neighbors had made because those interviews didn't take place until months later right but he was subject to cross-examination whether or not it was limited by the evidence that was in the record notwithstanding he was subject to cross-examination otherwise his testimony would not have been admissible at all that well he certainly was subject to cross-examination for the incredibly limited purpose of whether or not this individual should be bound over for trial and I think I'm incredibly limited I mean it's the defense at that point has the option to cross-examine the witness regarding anything so it's often a matter of strategy whether or not the defense attorney elects not to engage in extensive cross-examination but that has no bearing on whether or not the witness is available for cross-examination well I think all of the things being equal you're right judge Rawlinson but the but the issue is when you have not used if you are unable to cross-examine an individual because of trial strategy that's one thing if you're unable to cross-examine an individual because you don't have a sufficient amount of investigation that's been completed by the investigating agency by the prosecutor to determine whether or not there are other witnesses that were out there who did say that this sufficient that this other timeline was established and how the prosecution isn't the only entity that's doing investigation defense attorney the defense investigators are also doing investigation so the onus is not only on the prosecution in terms of the evidence that's brought for it right that's certainly correct your honor I guess what we're talking about here is how far do we want to go with a legal fiction if what we're talking about is that a that you have the ability to a cross-examine an individual thoroughly during a preliminary hearing without the opportunity to have all of the evidence available to you for example the witnesses that said that there was different timeline then certainly we can say and we can wash our hands of the situation that Jeff deals his testimony is reliable it's credible well the jury heard it that's that's where we are at this point the jury heard his testimony and all of the other witnesses testimony and if there was some discrepancy the and I think the issue is again if you want to take that legal fiction far enough we can say the evidence was presented to the jury so therefore they could have relied upon it I think that the issue that's not a fiction it was presented to them and whether it was it's that's why a little bit like saying well he just chose not to cross-examine for some strategic reason there's still an opportunity it's not a fiction it isn't to your liking but it's not a construct there was cross-examination I think judge Graver that the difference would be in my mind a choice to make it is to do a cross-examination with regards to evidence that's available to you or or not to do a cross-examination is a profoundly different choice than choosing to do a cross-examination based on evidence that you don't have we're not choosing to do it but why didn't he have it if he I mean he could have talked to the neighbors or I mean there's no indication here that there was a thwarted attempt to talk to the neighbors before the preliminary hearing either and I get and again I think that the issue is for the purposes of a preliminary hearing that's a decision that the defense attorney may decide to make or not make based on other issues that have nothing to do with whether or not he wants to effectively cross-examine Jeff Dills he may have other things that are going on that other avenues of investigation and he decided not to go to those particular witnesses what we've got in front of us here is a case where the only witness that establishes the timeline for the prosecution was not present to testify was not subject to cross-examination about the witnesses other statements and based on this and this court's ability to review whether the failure of a state court to give appropriate weight to all of the evidence may mean that its conclusion is objectively unreasonable that's the reason why this case can't stand why is the version of the testimony we have of deals why is it so much of it blacked out with regard I you know I'm not sure about that your honor if you'd I can but I just thank you you may have a minute for rebuttal when the time comes even though you've used your time thank you so we'll hear next from the state may please the court Arlene sub it all on behalf of respondent do you know the answer to that by any chance your honor I just I just put what was in our the record I had and that was the record that I don't even know what was said beneath the blackout no your honor because we just have the appellate record we don't have and there's no explanation in the record as to why not that I was able to see your honor though I do believe version given to the jury in that form I believe it was given in that form however explanation as to not that I saw your honor I thought the exact same thing there is and there is another section in the CT that has the exact same one so there's two versions but I thought it was exactly the same so I just put in the excerpts of record the exact same one however if you if you if you'd like us to do supplemental briefing on why that is I'd be more than willing to I just would have liked to have seen what I don't know that's I asked the same thing you do you concede that without Jeff Dills I don't know what his first name is but without mr. Dills his testimony that you that basically no rational jury could have convicted her do you concede that point he his testimony is extremely important however there is testimony that corroborates his testimony and that's the neighbor Philip Virga and his testimony was very detailed he said I woke up I act my my door was partly open say I saw miss long walk into her house at once no he did not so he just corroborates Jeff Dills and Jeff Dills is the main without him basically I mean the trial judge said I wouldn't even have let this case go to the jury and I tend to agree with yes your honor the trial judge did say that the Court of Appeals said so that Jeff Dills his testimony was extremely okay so I can't think of another case where somebody could potentially spend the rest of their life in prison based on the testimony of somebody who never showed up at the court and the jury just was this transcript but heavily redacted transcript at that of his testimony is does that impact in your view our review under edpa in some fashion well your honor you have to take the evidence viewing light and most favorable favorable to the prosecution and in this case with Jeff Dills testimony and the corroboration of Philip Virga who said he he heard a motorcycle drive up at 120 and he also heard voices at about 12 and that corroborates also Jeff Dills testimony that he Ozzie and miss long were at the driveway and they were there was arguments and Ozzie drove up and revved his motorcycle and and and you could hear miss miss long and Philip Virga was able to hear that and he heard at 120 Jeff Dills a motorcycle presumably it was Jeff Dills drive away and then he also heard at two o'clock a car alarm so that's also corroborated by other neighbors so we have that else testify about hearing the car alarm at any point I'm sorry your honor did anyone else hear about testify about hearing a car alarm at two o'clock yes several neighbors I believe Juanita Sandoval Alejandro Sandoval perhaps I'm not sure of the names but several other neighbors all heard the car alarm go off around two o'clock and and it was the appellant's expedition did mr. Dills ever say anything about the car alarm going off no your honor he would have been home at that time because he said he specifically was home if he got the time wrong maybe not well you know when he testified they specifically cross-examined cross-examined him on how he knew specifically it was 120 and he said I live very close by it takes about 10 minutes to get home I parked my motorcycle in my foyer I got dressed that took about two to three minutes I set my alarm and I looked at specifically at the clock and it said 136 and so he was cross-examined on why he remembers it so well that it was 120 how long after I apologize for not knowing the exact date but the date of his preliminary hearing testimony how long after the events of this night was that what was the gap in time I am not sure your honor I believe it was in 2005 I really don't know that it's later months later you're late months but I really don't know the dates your honor did he give a statement to the police right afterwards I perhaps I don't know your honor we don't get the police reports we just get the appellate record okay but I thought maybe at some point during his testimony he was asked if he wanted to refresh his recollection I don't believe his you see what I'm getting at though I mean yes I yeah I presumably there was a three months later the testimony of someone saying that I remember looking at my clock I mean I couldn't remember what my clock said when I went to bed probably two nights ago well your honor we have to presume that the jury heard that they never got to see him I guess that's what's so bothersome about this case you're conceding that without his testimony the case can't even go to the jury and most of the time the reason judges in our position can I mean we have confidence in what the jury concluded because hey we weren't there they got to see the witness evaluate demeanor hear the cross-examination right but none of that's present that's why I asked you if you think that impacts at all our review under because I just can't remember a case like this one well it's not at all unusual for preliminary hearing testimony to be admitted at trial is it no your honor because all we have to show is that it was that the witness was unavailable and in this case because he had died in a motorcycle accident he was unavailable and he was subject to cross-examination which he was here oftentimes witnesses disappear they failed to appear they so it's not that unusual for this to happen yes your honor maybe you can just run through how exactly she got away with or not got away but how she could have possibly have done this even with let's say she got dropped off at 120 she got dropped off at 120 there was circumstantial evidence that she had motive and opportunity how did she physically do this without leaving any physical evidence connecting her to the crime she got there at 120 I think it's relevant that there was a dog who never barked and neighbors have testified that he barks a lot and and a with the physical I'm talking about the amount of blood that was sprayed all over this place right I don't know how she could not have gotten blood on her on her clothing there's no I how in the world that you wash all that without using any of the sinks at the house drive somewhere else and dispose of the murder weapon and her clothes and the like just walk me through how she didn't have anything on her is circumstantial evidence that she was guilty of this crime the testimony was that there was blood everywhere 360 degrees around yet she had nothing on her and yet she testified that she went in there tried to pick up Ozzy touched him ran frantically around the house yet she has nothing on her but there is evidence that the back door is open and that there's a running jacuzzi and so she could have a reasonable jury could have inferred that she cleaned herself off in the jacuzzi the only not a single drop of water around the jacuzzi as I understand it no trace of blood in the jacuzzi whatsoever there's no evidence to state whether there was water or not sure the police investigators combed every inch of that property to see if they could come up with some blood and they found nothing okay that's what I'm just physically how could she have accomplished well your honor these this evidence was all presented to the jury and they made the credibility determinations and we must presume that they are correct we can't second-guess them so even if you or I disagree with it it doesn't matter because the standard is any rational jury and any fair-minded jurists and what they determined and we we are presumed that two blocks away they only went to two or three houses down the street and behind her house and there's testimony and evidence that there's a YMCA a school a shopping center that had plenty of garbage or dumpsters that she could have dumped the so it was the prosecution's theory that if she came home at 120 and she came she had told I mean again this depends on deals but she said I'm gonna go kick his ass that she could have killed him at 122 with a baseball bat run out the back threw everything away came back and called 9 1 1 I mean I guess that's gotta be the theory yes and with 45 to 55 minutes that would be sufficient to do that yes your honor because she only had to go two blocks away in order to dump any of the items and there's testimony was connecting any other person to to the scene either no your honor and in fact they so there's no alternative except for people who had a grudge who had alibis yes your honor they did present alibi or witnesses third-party culpability witnesses that was Joe Berger ski and China lovejoy and they both had alibis and so they couldn't have done it and there was evidence by the brother of Ozzie that there were golf clubs that he played golf that there was a golf club and three baseball bats by the front door when he visited about a month or two beforehand and police did not find any golf clubs in the garage or by the front door and one of the baseball bats was missing and so it a reasonable jury could infer that that was the murder weapon used not necessarily by her let me ask you this was there any testimony from other that night only her own testimony okay there was no other defense witnesses who were with her but that night did the police take her clothing that night I believe so yes I think it was a studded belt and jeans they took her clothes but there was nothing items she brought in after she got dropped off the items she brought in from the house I think it maybe was a helmet some hats or purse and whatnot and they had no blood either your honor yeah so your your theory is that she was such I mean I think you have to attribute to her that she was basically a professional contract killer that she thought you know what I'm gonna leave these items outside I'm gonna bludgeon this guy with a bat leave blood everywhere and then I'm gonna bring the items in and I don't think you have to show that she's a contract killer but just that the this scenario is reasonable and it is she had the time to do it she had 49 minutes she had the means she had a car there she had the opportunity to do it and her shoe she said her she kicked off her shoes when she first walked in yet her shoes were facing out she says she couldn't find her things she said on the floor because maybe she had brought him in after but that's what I mean if even if you credit if she got dropped off at 120 wouldn't she just leave her stuff there on the floor see him there she got mad at him for whatever reason and there would be blood all over everything not if she had left it outside and dropped it all off outside I mean she couldn't find her purse her keys her cell phone those were never found maybe they had blood on him and those are the things she disposed of and we know that she had those because she used them to hit Aussie with them earlier and Jeff Dills testified that they were in the bushes yet police were never able to find them and she said she couldn't find them either so where were they she probably she probably and he was already about to die then why didn't she call 9-1-1 for 50 minutes she did it I have real doubts about whether she did it well your honor whether you have doubts or not the question is whether the jury could reasonably find that and they and whether the state court reasonably could hold that there was sufficient evidence yes your even if we would come to a different conclusion if we were the initial review in court we have to find that they were objectively unreasonable in concluding that there was sufficient evidence yes that is the standard under a deeper your honor and it was reaffirmed by the United States Supreme Court in Harrington versus Richter and so that is the standard that we are we have and you know the defendant constantly uses the wrong standard the standard is whether the state court applied Jackson unreasonably and here they did not because viewing the evidence and light most favorable to the prosecution there was sufficient evidence to support Long's conviction for second-degree murder she had motive she had opportunity there was plenty of evidence of consciousness of guilt she lied on numerous occasions and she you know she had for 49 minutes in order to do this and a reasonable jury could infer that that was that was reasonable so unless this court has any other questions I'd submit on the briefing you may do that I think we've run out of questions thank you counsel you may have a minute for rebuttal thank your honors and I won't take too much of your time I just wanted to reiterate some of the issues that that are present in front of this court specifically with some of the questions that Judge Watford had there was a dearth of evidence that showed this is this individual committed the crime and you have to consider the context of this of this case Kimberly Long and a number of witnesses testified to this as had been drinking since 10 a.m. that day she had either had 17 shots or 20 shots of alcohol over the course of this period of time so for her to come into the house deliver eight precise blows to the head of Oswald Condie have the presence of mind to clean up completely without any drop of blood in any part of the house leave her clothes either outside while this offense was being committed or dispose of them by driving them away even though there's no blood that's found in the car it just makes no sense with regards to corroboration that Jeff Dills' testimony was incorrect there was there were first responders who arrived at the scene who established that the victim was cold that at the time that they that they found Jeff Dills excuse me that at the time that they found Oswald Condie rigor mortis had already set in that the lividity had already begun setting the time of death what much earlier than even the 120 time. Doesn't that count against that seems like it cuts heavily there are Jeff Dills has established and other individuals have established that Kimberly Long was not at the house at say for example 11 o'clock and if you're looking at rigidity and rigor mortis lividity that would be the time frame where an individual would expire to her according to her version of events he died about what 15 minutes before they got there the EMT people the well there was a question more or less there was a question as to whether or not in her mind that that Oswald Condie had died shortly before EMT could respond but I think he was still breathing when she got there and I think contextually the fact that this woman was by any account by any stretch of the imagination very very intoxicated could cause her to draw an incorrect conclusion about whether or thank you counsel thank you we appreciate the arguments of both of you it's been very helpful the case is submitted and for this session we will be adjourned
judges: Graber, Rawlinson, Watford